**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MAZEN HASAN AGHA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant | CASE NO. 23-17182 |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

**I.    INTRODUCTION**

1.    Uber is a car service, which engages thousands of drivers across the state of Illinois who can be hailed and dispatched through a mobile phone application to transport riders.  Uber is based in San Francisco, California, and it does business across the United States, including extensively throughout Illinois.

2.    As described further below, Uber has misclassified its drivers, including Plaintiff Mazen Hasan Agha, as independent contractors when they should be classified as employees.  Based on the drivers' misclassification as independent contractors, Uber has unlawfully required drivers to pay business expenses (including but not limited to the cost of maintaining their vehicles, gas, insurance, phone and data expenses, and other costs) in violation of the IWPCA, 820 ILCS 115/9.5(a).  Additionally, Uber has failed to pay drivers promised wages under the IWPCA, 820 ILCS 115/4. Uber has also failed to guarantee and pay its drivers minimum wage for all hours worked and it has failed to pay overtime premiums for hours worked in excess of forty hours per week in

violation of the IMWL, 820 ILCS 105/1, *et seq*. and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. Finally, Plaintiff alleges that Uber fraudulently induced drivers to accept rides, and was unjustly enriched, by offering drivers higher "surge" fare rates and promotional bonuses, which it never intended to pay.

3.     Plaintiff brings this action on his own behalf and on behalf of other individuals who have driven for Uber across Illinois who may choose to opt in to this case, pursuant to the FLSA 29 U.S.C. § 216(b).

4.     Plaintiff also brings his Illinois state law claims on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23.

5.     Plaintiff seeks compensation on his own behalf and on behalf of all those similarly situated, for lost wages, liquidated damages, attorneys' fees and costs, pre-and post-judgement interest, and any other relief that the Court deems proper.

## II.   PARTIES

6.     Plaintiff Mazen Hasan Agha is an adult resident of Chicago, Illinois, where he has worked as an Uber driver since approximately 2014.

7.     Plaintiff has brought this action on his own behalf and on behalf of all others similarly situated, namely all other individuals who have worked as Uber drivers in Illinois.

8.     Defendant Uber Technologies, Inc. ("Uber") is a Delaware corporation headquartered in San Francisco, California.

## III.   JURISDICTION

9.     The Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

10.     The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

11.     The Court also has jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since Uber is a California citizen, incorporated in Delaware and the putative plaintiff class members reside primarily in Illinois; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.

## IV.    STATEMENT OF FACTS

12.     Uber is a San Francisco-based car service that provides transportation service in cities throughout the country, including in Illinois, via an on-demand dispatch system.

13.     Uber offers customers the ability to hail a car service driver on a mobile phone application.

14.     Although classified as independent contractors, Uber drivers are employees under federal and Illinois law.

15.     Drivers perform a service in the usual course of Uber's business, since Uber is a car service that provides transportation to its customers, and drivers such as Plaintiff Mazen Hasan Agha perform that transportation service.  Uber holds itself out as a transportation service, and it generates its revenue primarily from customers paying for the very rides that its drivers perform.  Without drivers to provide rides for Uber's customers, Uber would not exist.

16.     Drivers also perform their work in Uber's usual place of business, which is the roads and highways upon which Uber operates its fleet of "on demand" drivers to transport riders wherever they want to go.

17.     Uber requires its drivers to abide by a litany of policies and rules designed to control the drivers' work performance.  Uber retains the right to terminate drivers at any time in its discretion. Uber may terminate a driver if the driver behaves in a way that Uber believes is inappropriate or has violated one of Uber's rules or standards. Drivers are also subject to termination based on Uber's system of using customer rating feedback; drivers can be terminated in Uber's discretion if Uber deems their customer ratings to be inadequate.

18.     When driving for Uber, Uber drivers are not engaged in their own transportation business. Instead, when driving Uber customers, drivers wear the "hat" of Uber.  Customers cannot request specific Uber drivers; instead, Uber assigns particular rides to drivers.

19.     Uber does not require drivers to possess any skill above and beyond that necessary to obtain a normal driver's license.

20.     Drivers' tenure with Uber is for an indefinite amount of time.

21.     Uber provides the drivers with the primary instrumentality with which they can perform services for Uber because Uber only derives a benefit from the drivers' labor when they use Uber's software.

22.     Uber sets the rate of pay for drivers' services and changes the rate of pay in its sole discretion.

4

23.     At times, Uber has deducted money from drivers' fares to cover the cost of an Uber-issued iPhone, which drivers use to run Uber's software and accept ride requests.   At other times, drivers have been required to provide, and pay for, their own phones.

24.     Drivers must undergo background checks as a prerequisite to driving for Uber.

25.     Drivers' vehicles must meet Uber's quality standards, which it determines and may change at any time at its sole discretion.

26.     Uber monitors drivers' performance and may suspend or terminate drivers who do not maintain high customer satisfaction ratings or engage in other conduct that Uber may determine constitutes grounds for suspension or termination.

27.     Uber may force drivers who decline trips to log out of the Uber application.

28.     Uber drivers are engaged in interstate commerce.  At times, drivers transport passengers across state lines.  Furthermore, drivers are engaged in interstate commerce as they routinely transport passengers who are within the flow of interstate commerce, traveling to destinations out of state, such as arriving at or leaving train stations, bus stations, and airports.

29.     Uber does not reimburse drivers for necessary expenses they incur while working for Uber, including, but not limited to the cost of obtaining and maintaining their vehicles, gas, insurance, and phone and data expenses for running the Uber Application.  Drivers incur these costs as a necessary expenditure to work for Uber, which Illinois law requires employers to reimburse.  Furthermore, Uber's failure to

reimburse these expenses (including mileage expenses) routinely brings Uber drivers' pay down below state and federal minimum wage.

30.     Uber has violated the FLSA and IMWL by failing to assure that drivers, including Mr. Agha, make the applicable minimum wage for all hours worked, after accounting for their expenses and other deductions taken from their pay.  The hours they work include hours spent transporting passengers, driving to pick up passengers, and driving between rides while awaiting the next ride.

31.     For example, during the week of February 28 to March 7, 2023, Plaintiff Agha earned less than minimum wage when accounting for all of his time spent on the Uber app and after deducting expenses for mileage driven transporting passengers and between rides (calculated at the IRS standard reimbursement rate).

32.     Uber has also violated the FLSA and IMWL by failing to pay its drivers like Mazen Hasan Agha the appropriate overtime premium of time-and-a-half their regular rate of pay for all overtime hours worked beyond forty per week.  Mr. Agha has worked more than forty hours per week at various times since he began driving for Uber, including the week of February 28 to March 7, 2023, but he was not paid the appropriate premium of time-and-a-half his regular rate of pay for the time he worked beyond forty hours that week.  The hours that drivers such as Mr. Agha have worked include hours spent transporting passengers, driving to pick up passengers, and between rides while awaiting the next ride.

33.     Uber has also engaged in a scheme to entice drivers to perform work by offering to pay higher "surge" prices and promotional bonuses, without ever intending to pay the offered amounts.

6

34.     For example, during busy or high demand periods of time, Uber implements surge pricing for customers in the designated zone. Drivers who pick up passengers within the designated zone are also offered a "surge bonus".

35.     The purpose of the surge bonus is to induce drivers to travel to the designated zone so that Uber has enough drivers in the area to meet its customers' needs.

36.     Drivers can see the amount of the offered surge bonus in their app on a "driver heat map" while they are offline. However, immediately upon going online (and thereby making themselves available to accept a customer ride) the amount of the surge bonus often automatically decreases. As a result, even though the driver decided to begin working because they saw the surge bonuses being offered on the driver map, they are paid less than the offered amounts.

37.     For example, on January 10, 2022, before deciding to start working, Mr. Agha checked the driver map to see whether there were any surge bonuses being offered. The driver map showed surge bonuses in the Lincoln Park neighborhood, including an $11 surge bonus by Diversey Harbor. As soon as Mr. Agha logged into the system, all of the surge bonuses immediately decreased. The surge bonus by Diversey Harbor dropped to $8.50.

38.     Similarly drivers, whether offline or online, will travel to the surge zone expecting to be paid the surge bonus reflected on the driver map. When a driver enters the surge zone, they are supposed to be paid the surge bonus for their next ride. However, once the driver accepts a customer ride, instead of paying the driver the surge bonus shown on the driver map, Uber regularly pays a lower amount or no surge

7

bonus at all (even though the passenger is still charged a higher surge price for the ride).

39.     For example, on August 19, 2021, Mr. Agha accepted a ride that originated from O'Hare International Airport. The driver map showed an $18 surge bonus for ride when he accepted the ride. However, Uber only paid Mr. Agha a $14 surge bonus.

40.     Moreover, when Mr. Agha complained to Uber that he was not paid the proper surge bonus for the August 19, 2021 ride, Uber refused to correct the payment to him, even though Mr. Agha provided the Company with a screenshot from his cellphone showing the driver map with the $18 surge bonus.

41.     Additionally, Uber will offer drivers various promotional bonuses to entice them to accept more customer rides. For example, it offered promotional bonuses for accepting three or more consecutive passenger rides and for completing a certain number of passenger rides per week (and/or weekend). However, it regularly refuses to pay the promotional bonuses to drivers who meet the requirements, even if a driver complains to Uber about the lack of payment.

## V.     CLASS ACTION ALLEGATIONS

42.     The class representative, Mazen Hasan Agha, has brought this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Uber drivers who have worked for Uber in Illinois.

43.     The class representative and other class members have uniformly been misclassified as independent contractors.

8

44.     The members of the class are so numerous that joinder of all class members is impracticable.

45.     Common questions of law and fact regarding Uber's conduct exist as to all members of the class and predominate over any questions affecting solely any individual members of the class.  Among the questions of law and fact common to the class are:

    a.  Whether the work performed by class members—providing transportation service to customers—is within Uber's usual course of business;

    b.  Whether the work performed by class members—providing transportation service to customers—is performed at Uber's usual place of business, namely the roads and highways upon which they operate;

    c.  Whether class members have been required to work under Uber's direction and control;

    d.  Whether class members are engaged in an independently established business or occupation while they are transporting Uber's customers;

    e.  Whether class members have been required to bear the expenses of their employment, such as expenses for their vehicles, gas, smart phone, and other expenses;

    f.  Whether Uber failed to pay class members the full amounts of the surge bonuses shown (and offered) on the driver map.

46.     The class representative is a member of the class, who suffered damages as a result of Uber's conduct and actions alleged herein.

47.     The class representative's claims are typical of the claims of the class and he has the same interests as the other members of the class.

48.     The class representative will fairly and adequately represent and protect the interests of the class.  The class representative has retained able counsel experienced in class action litigation and particularly in the allegations included here. The interests of the class representative are coincident with, and not antagonistic to, the interests of the other class members.

49.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

50.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical.  Moreover, since the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation makes it practically impossible for the members of the class individually to redress the wrongs done to them.  The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation.  There will be no difficulty in the management of this action as a class action.

## VI.     COLLECTIVE ALLEGATIONS

51.     Plaintiff's FLSA claims should proceed as a collective action on behalf of all similarly situated individuals who have worked as drivers for Uber in Illinois during the past three years who may choose to opt in to this case.

52.    Plaintiff attaches as Exhibit A his Notice of Consent to Become a Party Plaintiff in a Collective Action under the Fair Labor Standards Act.

53.     All potential opt-in Plaintiffs worked pursuant to the common misclassification scheme described above under which Uber did not pay drivers at least the minimum wage for all hours worked or overtime wages for hours worked in excess of forty hours per week, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## COUNT I
## FLSA Minimum Wage Claim

54.    Plaintiff re-alleges and incorporates by reference paragraphs 1-53 of this Complaint as if fully rewritten herein.

55.    Uber is an "employer" for purposes of the FLSA, 29 U.S.C. § 203(s), because, on information and belief, Uber has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

56.    Plaintiff and the members of the proposed FLSA collective have been employees of Uber for purposes of the Fair Labor Standards Act during all times relevant to this Complaint.

57.    Under the FLSA, 29 U.S.C. § 206, Uber was required to pay Plaintiff and the members of the proposed FLSA collective minimum wages for all hours worked.

58.    Uber has failed to pay Plaintiff and the members of the proposed collective an hourly rate of at least the federal minimum wage of $7.25 per hour as required by the FLSA, 29 U.S.C. § 206(a)(1)(C).

59.     Uber's conduct was willful and intentional, in that Uber knew, required, approved and/or suffered or permitted Plaintiff and members of the proposed FLSA collective to perform work for which they were not paid at the federal minimum wage.

60.     This claim is brought on behalf of a group of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## COUNT II
### Failure to Pay Minimum Wage, IMWL, 820 ILCS 105/1, *et seq.*

61.     Plaintiff re-alleges and incorporates by reference paragraphs 1-53 of this Complaint as if fully rewritten herein.

62.     At all times relevant herein, Plaintiff and the members of the proposed class were employees of Uber within the meaning of the IMWL, 820 ILCS 105/3(d).

63.     At all relevant times, Uber was an "employer" as defined in the IMWL, 820 ILCS 105/3(c).

64.     Plaintiff and the members of the proposed class have not received proper minimum wages under the IMWL, 820 ILCS. 105/1, *et seq.*, during their employment with Uber.

65.     Pursuant to 820 ILCS 105/4, Plaintiff and the members of the proposed class were entitled to be compensated at least the applicable Illinois state minimum wage rate of $10 in late 2020; $11 in 2021; $12 in 2022 and $13 in 2023.

66.     Uber's willful conduct in failing to ensure that its drivers have received the Illinois state minimum wage for all hours worked constitutes a violation of 820 ILCS 105/1, *et seq.* This claim is brought on behalf of all drivers who have worked for Uber in

Illinois during the last three years prior to the date of filing of this Complaint until the date of judgment in this action.

## COUNT III
### FLSA Overtime Claim

67.     Plaintiff re-alleges and incorporates by reference paragraphs 1-53 of this Complaint as if fully rewritten herein.

68.     Uber is an "employer" for purposes of the FLSA, 29 U.S.C. § 203(s), because, on information and belief, Uber has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

69.     Plaintiff and the members of the proposed FLSA collective have been employees of Uber for purposes of the Fair Labor Standards Act during all times relevant to this Complaint.

70.     Plaintiff and members of the proposed FLSA collective have regularly worked more than forty hours per week, yet Uber failed to pay them the overtime rate required under the FLSA, in violation of 29 U.S.C. § 207.

71.     Uber's violations of the overtime requirements of the FLSA were willful, since its conduct shows that they either knew that its conduct violated the FLSA or showed reckless disregard for whether their actions complied with the FLSA.

72.     This Count is brought under 29 U.S.C. § 216(b) on behalf of all Uber drivers in Illinois who worked more than forty hours per week in any week during the past three years who may choose to "opt in" to this case.

## COUNT IV
### Failure to Pay Overtime, 820 ILCS 105/4a

73.     Plaintiff re-alleges and incorporates by reference paragraphs 1-53 of this Complaint as if fully rewritten herein.

74.     At all times relevant herein, Plaintiff and the members of the proposed class were employees of Uber within the meaning of the IMWL, 820 ILCS 105/3(d).

75.     At all relevant times, Uber was an "employer" as defined in the IMWL, 820 ILCS 105/3(c).

76.     Plaintiff and the members of the proposed class have not been paid overtime for all hours worked beyond forty per week in violation of 820 ILCS 105/4a during their employment with Uber.

77.     Pursuant to 820 ILCS 105/4a, Plaintiff and the other members of the proposed class have been entitled to be compensated at time and a half the regular rate of pay for all overtime hours worked.

78.     Uber has failed to ensure that its drivers receive overtime for all hours worked beyond forty per week.  This claim is brought on behalf of all drivers who have worked for Uber in Illinois and have worked more than forty hours per week during the last three years prior to the date of filing of this Complaint until the date of judgment in this action.

## COUNT V
### Failure to Reimburse Expenses, IWPCA, 820 ILCS 115/1, *et seq.*

79.     Plaintiff re-alleges and incorporates by reference paragraphs 1-53 of this Complaint as if fully rewritten herein.

14

80.     At all relevant times, Plaintiff and the members of the proposed class were "employees" of Uber as defined by the IWPCA.

81.     At all relevant times, Uber was the employer of Plaintiff and the members of the proposed class as defined by the IWPCA.

82.     The IWPCA provides that "[a]n employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS 115/9.5(a).

83.     Uber has violated the IWPCA, 820 ILCS 115/1 *et seq.* by misclassifying its drivers as independent contractors and failing to reimburse drivers for their necessary business expenses such as for operating and maintaining their vehicle and for the smart phones needed to run the Uber application.  This claim is brought on behalf of all drivers who have worked for Uber in Illinois during the period of January 1, 2019, until the date of judgment in this action.

## COUNT VI
**Failure to Pay Promised Wages, IWPCA, 820 ILCS 115/1, *et seq*.**

84.     Plaintiff re-alleges and incorporates by reference paragraphs 1-53 of this Complaint as if fully rewritten herein.

85.     At all relevant times, Plaintiff and the members of the proposed class were "employees" of Uber as defined by the IWPCA.

86.     At all relevant times, Uber was the employer of Plaintiff and the members of the proposed class as defined by the IWPCA.

87.     Under the IWPCA, "[a]ll wages paid on a daily basis shall be paid insofar as

possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned." 820 ILCS 115/4

88.     The IWPCA defines wages as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2.

89.     Uber has violated the IWPCA, 820 ILCS 115/1 *et seq.*, by misclassifying its drivers as independent contractors and failing to pay them all earned wages, including surge and other promotional bonuses.  This claim is brought on behalf of all drivers who have worked for Uber in Illinois during the last ten years prior to the date of filing of this Complaint until the date of judgment in this action.

**COUNT VII**
**Unjust Enrichment (in the Alternative to Count VI)**

90.     Plaintiff re-alleges and incorporates by reference paragraphs 1-53 of this Complaint as if fully rewritten herein.

91.     Uber offered Plaintiff, and the other members of the proposed class, surge bonuses and other promotional bonuses in order to encourage the drivers to perform more work so that Uber could meet the demands of its customers.

92.     Plaintiff and the other members of the proposed class accepted customer trips (and performed the work) with the expectation that they would be paid the surge bonuses shown on the driver map and that they would be paid all other promotional bonuses for which they qualified.

93.     Uber failed to pay Plaintiff and the other members of the proposed class the

16

amounts promised to them.

94.     Uber received the benefit of its drivers' work without paying the full amount of the surge bonus and/or promotional bonus to its drivers.

95.     Uber has been unjustly enriched by its refusal to pay Plaintiff and the other proposed members of the class the full amount of their surge and promotional bonuses after they performed the work.

96.     This claim is brought on behalf of all drivers who have worked for Uber in Illinois during the last five years prior to the date of filing of this Complaint until the date of judgment in this action.

## COUNT VIII
### Fraudulent Inducement

97.     Plaintiff re-alleges and incorporates by reference paragraphs 1-53 of this Complaint as if fully rewritten herein.

98.     Uber represented to Plaintiff and the other members of the proposed class that they would be paid the surge bonuses listed on the driver map. Uber likewise represented that it would pay Plaintiff and the other members of the proposed class various promotional bonuses based on their accepting three or more consecutive passenger rides, as well as their completing a certain number of passenger rides during a week (or weekend).

99.     Uber told Plaintiff and the other members of the proposed class that they would be paid the surge bonuses and other promotional bonuses in order to induce the drivers to perform more work so that Uber could meet its customers' demands.

100.    Uber had no intention of paying the surge bonuses displayed on the driver

17

map, or the other promotional bonuses.

101.    Uber knew that the surge bonus amounts stated on the driver map were not the amounts drivers would actually be paid. Specifically, Uber was aware of an alleged "glitch" in its software that caused the underpayment and/or non-payment of surge bonuses shown on the driver map. To that end, on or about October 2022, Uber acknowledged to its drivers that there was a "glitch" in its software. While it supposedly fixed the "glitch" for the California market, Uber never corrected it in Illinois.

102.    Additionally, when Plaintiff complained to Uber about the company's failure to pay the proper amount, Uber frequently did not respond. When it did respond, a service representative would tell Plaintiff that they were looking into his concerns, but then either not respond to his follow up, or have a different service agent contact Plaintiff to ask the same questions (and thereby start the cycle over).

103.    For example, in November 2023, Plaintiff was paid the wrong amount for two trips.  He contacted Uber's service representative to report the underpayment. The first service agent assigned to assist him abruptly ended the chat without resolving the issue. A second service agent was then assigned to assist Plaintiff. The second service agent followed the same script as the first service agent and again did not correct the underpayment. Plaintiff provided both service agents with screenshots from his phone showing the underpayment.

104.    Uber's sham complaint process caused Plaintiff and the other members of the proposed class to abandon their complaints for the unpaid amounts.

105.    Plaintiff and the other members of the proposed class justifiably relied on Uber's false statements about the amounts they would be paid when they accepted and

completed passenger rides.

106.     Plaintiff and the other members of the proposed class have sustained and will continue to sustain significant damages because of their reliance on Uber's false statements.

107.     This claim is brought on behalf of all drivers who have worked for Uber in Illinois during the last five years prior to the date of filing of this Complaint until the date of judgment in this action.

## COUNT IX
**Breach of Contract**

108.     Plaintiff re-alleges and incorporates by reference paragraphs 1-53 of this Complaint as if fully rewritten herein.

109.     Uber's failure to pay Plaintiff and class members the amounts of surge bonuses and other promotional bonuses, as described herein, constitutes breach of contract.

110.     Plaintiff and the other members of the proposed class have sustained and will continue to sustain significant damages because of Uber's breach of contract.

111.     This claim is brought on behalf of all drivers who have worked for Uber in Illinois during the last ten years prior to the date of filing of this Complaint until the date of judgment in this action.

WHEREFORE, Plaintiff requests that the Court enter the following relief:

a.      A declaratory judgment that the Plaintiff and class members are employees, not independent contractors, under federal and Illinois state law;

b.      Injunctive relief ordering Uber to comply with federal and Illinois state law;

c.      Issuance of notice and opportunity for similarly situated individuals to opt in to join the claims in this case brought under the FLSA, pursuant to 29 U.S.C. § 216(b);

d.      Certification of a class pursuant to Fed. R. Civ. P. 23;

e.      An order requiring Uber to provide a complete and accurate accounting of all the wages and expenses to which Plaintiff and members of the class are entitled;

f.      An award of monetary damages to Plaintiff and members of the collective in the form of back pay for unpaid minimum wages and overtime payments, together with liquidated damages in an equal amount under the FLSA;

g.      An award of monetary damages to Plaintiff and members of the class in the form of back pay for unpaid minimum wages and overtime wages, together with treble damages, and statutory damages pursuant to the formula set forth in the IMWL;

h.      An award of damages to Plaintiff and members of the class in the form of back pay for all unpaid wages, reimbursement of expenses, and statutory damages pursuant to the formula set forth IWPCA;

i.      An award of compensatory and punitive damages to Plaintiff and the members of the class;

j.      An award of prejudgment interest on the unpaid wages in accordance with 815 ILCS 205/2;

20

k.     Attorneys' fees and costs; and

l.     Such further relief as the Court deems just and proper.


Dated: December 28, 2023                    Respectfully submitted,

                                            MAZEN HASAN AGHA, individually
                                            and on behalf of all others similarly situated,

                                            By his attorneys,


                                            /s/ Bradley Manewith

                                            Bradley Manewith, IARDC # 6280535
                                            Lichten & Liss-Riordan, P.C.
                                            5 Revere Drive, Suite 200
                                            Northbrook, IL 60062
                                            Tel. (617) 994-5800
                                            Fax (617) 994-5801
                                            bmanewith@llrlaw.com


                                            Shannon Liss-Riordan (*pro hac vice
                                              anticipated*)
                                            Matthew Carrieri (*pro hac vice anticipated*)
                                            Lichten & Liss-Riordan, P.C.
                                            729 Boylston Street, Ste. 2000
                                            Boston, MA 02116
                                            Tel. (617) 994-5800
                                            Fax (617) 994-5801
                                            sliss@llrlaw.com
                                            mcarrieri@llrlaw.com