**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MAZEN HASAN AGHA, MICHAEL CRISSMAN, KEN ZUREK, and THOMAS LOFTUS, individually and on behalf of all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 23 C 17182** |
| **UBER TECHNOLOGIES, INC.,** | ) ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Mazen Hasan Agha, Michael Crissman, Ken Zurek, and Thomas Loftus have sued Uber Technologies, Inc. for alleged violations of the Fair Labor Standards Act (FLSA) and Illinois law. The plaintiffs are Uber drivers who allege that Uber has misclassified them as independent contractors instead of employees and has therefore failed to pay them minimum wages, overtime, and for business expenses such as gas and insurance. The plaintiffs seek to represent a class of Illinois Uber drivers in a collective action under 29 U.S.C. § 216(b) with respect to their FLSA claims and in a class action under Federal Rule of Civil Procedure 23 with respect to their Illinois state law claims. Before the Court are Uber's motion to compel arbitration under the Federal Arbitration Act (FAA) and the Illinois Uniform Arbitration Act (IUAA) and the plaintiffs' motion to conditionally certify a FLSA collective action.[1] For the following reasons, the

---

[1] The plaintiffs have not filed a motion to certify a Rule 23 class action.

Court grants Uber's motion to compel arbitration in part and denies the motion in part. The Court provisionally grants the plaintiffs' motion to certify the FLSA class but defers the issuance of notice in accordance with *Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020), until the parties submit further briefing regarding the drivers that Uber contends are bound by arbitration agreements.

## Background

Uber Technologies, Inc. develops and provides transportation and delivery services through its mobile phone applications ("apps") that connect customers with drivers. Before individuals can use Uber's apps as a driver, they must agree to a Platform Access Agreement (PAA) with Uber or one of its subsidiaries.[2] Throughout their relationship with Uber, drivers are likely to encounter and be asked to enter into multiple PAAs, either because the terms of the PAA have been updated or for some other reason. Each PAA contains a broad arbitration provision that states that drivers will be required to arbitrate "any legal dispute, past, present or future, arising out of or related to your relationship with us or relationship with any of our . . . affiliates, . . . subsidiaries or parent companies." Def.'s Mot. to Compel Arb. at 7. The arbitration provision specifies that it "survives after the relationship terminates."[3] *Id.*

_____

[2] Drivers sign a PAA with Rasier LLC to transport passengers (which Uber refers to as "rideshare or peer-to-peer transportation services"), with Portier LLC to provide general delivery services, and with Schleuder LLC to provide item delivery services.

[3] Uber represents that all of the arbitration agreements at issue contain the same or "substantially similar language" with respect to the provisions relevant to the present motions in this case. *See, e.g.*, Def.'s Mot. to Compel Arb. at 6. The plaintiffs have not disputed this proposition. The Court therefore assumes that there are no material differences in the arbitration provisions at issue and will use and rely on the contractual language quoted by Uber in its motion to compel arbitration.

Three aspects of the arbitration provision are relevant to the motions before the Court:  (1) the delegation clause, (2) the class action waiver, and (3) the opt-out clause.

First, the arbitration provision contains a "delegation clause" that requires "the arbitrator to resolve disputes arising out of or relating to interpretation or application of the Arbitration Provision, including the 'scope, enforceability, . . . applicability, . . . or validity of this Arbitration Provision or any portion of the Arbitration Provision.'"  *Id.* at 8 (quoting the contract language).

Second, the arbitration provision contains a series of terms that require drivers to arbitrate their claims individually.  Like the parties, the Court will refer to these provisions as the "class action waiver," although the limitations also apply to other types of representative actions such as the collective FLSA action at issue in this case.  The arbitration provision states, at the outset, that:

> **IF YOU DO NOT OPT OUT OF THIS ARBITRATION PROVISION AND AGREE TO ARBITRATION WITH US, YOU ARE AGREEING IN ADVANCE . . .  THAT YOU WILL NOT PARTICIPATE IN AND THEREFORE, WILL NOT SEEK OR BE ELIGIBLE TO RECOVER MONETARY OR OTHER RELIEF IN CONNECTION WITH, ANY SUCH CLASS, COLLECTIVE OR REPRESENTATIVE LAWSUIT.**

Def.'s Mot. to Compel Arb., Ex. C § 13.  A subsection of the arbitration provision entitled "Class Action Waiver" further states:

> **This Arbitration Provision affects your ability to participate in class, collective, coordinated, or consolidated actions.**  Both Uber and you agree that any and all disputes or claims between the parties shall be resolved only in individual arbitration, and not on a class, collective, coordinated, or consolidated basis on behalf of others.  There will be no right or authority for any dispute (whether brought by you or us, or on your or our behalf) to be brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, or consolidated action, or for you or us to participate as a member in any such class, collective, coordinated, or consolidated action. [. . .]

*Id*. § 13.4(a).  Importantly, the delegation clause does not apply to disputes "regarding the Class Action Waiver and Representative Action Waiver"; rather, these issues are expressly "reserved for a court" to decide.  Def.'s Mot. to Compel Arb. at 8.

Third, the arbitration provision provides drivers with the option to opt out of the arbitration provision entirely.  The PAA explains, in relevant part:

> Agreeing to this Arbitration Provision is not a mandatory condition of your contractual relationship with us.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision. . . .  To do so, within 30 days of the date that this Agreement is electronically accepted by you, you must send an electronic email from the email address associated with your driver account to [designated email address], stating your intent to opt out of this Arbitration Provision, as well as your name, the phone number associated with your driver account, and the city in which you reside.

*Id*. at 2–3.  Drivers who do not opt out of the arbitration provision within thirty days are bound by the terms of the provision.  Importantly, the opt-out clause includes a term that preserves any other arbitration agreement that the driver may have entered into with Uber:

> Any opt out of this Arbitration Provision does not affect the validity of any other arbitration agreement between you and us.  If you opt out of this Arbitration Provision and at the time of your receipt of this Agreement you were bound by an existing agreement to arbitrate disputes arising out of or related to your use of our Platform and Driver App, that existing arbitration agreement will remain in full force and effect.

Def.'s Mot. to Compel Arb., Ex. C § 13.8(c).

The plaintiffs in this case all entered into multiple PAAs with Uber and/or its subsidiaries.  Specifically, Uber asserts that Agha entered into two PAAs on January 11, 2022 and did not timely exercise his right to opt out of the arbitration provision of either contract.  Agha then entered into two PAAs on May 16, 2023 and timely exercised his right to opt out of the arbitration provisions of both contracts.  Uber asserts that Zurek

entered into PAAs on March 30, 2020, April 20, 2021, and January 21, 2022. Uber asserts that Zurek did not opt out of the March 30, 2020 arbitration provision. He did, however, timely opt out of the arbitration provisions of the subsequent two PAAs. Uber asserts that Crissman entered into two PAAs on July 27, 2023 and did not timely exercise his right to opt out of the arbitration provision of these contracts. Finally, Uber asserts that Loftus entered into two PAAs on May 16, 2023 and did not timely exercise his right to opt out of the arbitration provisions of either contract.

The plaintiffs in this suit allege that they worked as Uber drivers in Illinois for approximately 20 to 50 hours per week for several years. They allege that Uber classified them (and all of its drivers) as independent contractors but that they are appropriately classified as employees under Illinois law. As a result of the misclassification, the plaintiffs allege, Uber has unlawfully "failed to guarantee and pay its drivers minimum wage for all hours worked and it has failed to pay overtime premiums for hours worked in excess of forty hours per week in violation of" the Fair Labor Standards Act. Am. Compl. ¶ 2. The plaintiffs also allege that Uber has violated Illinois law by failing to reimburse them for business expenses such as "the cost of maintaining their vehicles, gas, insurance, phone and data expenses, and other costs," as well as "fraudulently inducing drivers to accept rides . . . by offering drivers higher 'surge' fare rates and promotional bonuses, which it never intended to pay." *Id.*

The plaintiffs seek to represent a class of Illinois Uber drivers in a collective action under 29 U.S.C. § 216(b) with respect to their FLSA claims and in a class action under Federal Rule of Civil Procedure 23 with respect to their Illinois state law claims. They filed a motion for conditional certification of the FLSA collective action on February

10, 2024.  Uber filed a motion to compel arbitration under the FAA and the IUAA on March 4, 2024.

## Discussion

The Court will first address Uber's motion to compel arbitration.  "To compel arbitration, a party must show (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration."  *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023).  "When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts."  *Id.* at 701 (quoting *Druco Restaurants, Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014)).  As the Court will discuss further, the parties dispute whether the FAA applies to the plaintiffs' contracts with Uber.  The parties agree, however, that Illinois law governs any issue that turns on state rather than federal law.

## A.     Whether the parties contracted to arbitrate

The first issue that the Court must decide is whether the parties have contracted to arbitrate at all, given that each plaintiff in this case alleges that they have taken Uber up on the opportunity to opt out of the PAA's arbitration provision.  The Court emphasizes that this question is separate from the issues of whether the Federal Arbitration Act applies and whether the arbitration provision is unenforceable even if the plaintiffs nominally agreed to it.  Uber appears to argue that the delegation clause means that an arbitrator, not the Court, must resolve this threshold issue.  But the delegation clause is *part of* the *optional* arbitration provision; Uber does not contend that the delegation clause is a separate, mandatory term of the PAA.  If the plaintiffs

successfully opted out of the arbitration provision, as they allege, then they are not bound by its delegation clause. "Even the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate." *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022); *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) ("[A]rbitration is strictly a matter of consent.").

Turning to the merits of the issue, the Court notes that the plaintiffs do not genuinely dispute Uber's assertion that each of them entered into at least one PAA containing an arbitration provision from which they did *not* opt out. Uber's motion to compel arbitration identifies in detail the specific PAAs under which it seeks to compel arbitration, the date on which each plaintiff entered into the PAA, and whether the plaintiff timely opted out of the PAA. In the plaintiffs' response brief, they do not directly dispute that they all entered into at least one PAA from which they did not timely opt out. Rather, they argue that, because they opted out of the arbitration provisions of *subsequent* PAAs, they are no longer bound by the arbitration provisions of any previous PAA. In other words, plaintiffs argue that any earlier agreement to arbitrate is superseded by a later-in-time opt-out. They also argue that the arbitration provision at issue is unenforceable under federal and state law.

The plaintiffs' brief, however, includes a vague footnote that makes a passing reference to the existence of a factual dispute regarding whether Crissman and Loftus opted out that must be resolved by way of a trial. *See* Pls.' Resp. to Mot. to Compel Arb. at 3 n. 4. It is not clear whether Crissman and Loftus are attempting to argue that they—unlike Agha and Zurek—in fact opted out of *each and every* arbitration provision

that Uber relies upon in its motion to compel, or whether Crissman and Loftus are simply trying to rebut Uber's argument that they never opted out of *any* arbitration provision. But if the plaintiffs intend to assert the former, they have not provided evidence of a genuine factual dispute for the specific agreements Uber has identified. Crissman and Loftus do not argue, for example, that they never received the PAAs that Uber has identified. *Cf. Kass*, 75 F.4th at 705 (holding that a factual dispute reserved for a factfinder existed where the plaintiff "flatly denied" that she had received the defendant's e-mail regarding a modification to its terms and services that included a mandatory arbitration provision). Moreover, the opt-out e-mails that Crissman and Loftus attached as exhibits to their response to the motion to compel do not include opt-out e-mails within the relevant time window for all of the PAAs that Uber seeks to enforce. The Court therefore concludes that there is no genuine dispute that each of the four plaintiffs entered into at least one PAA with a binding arbitration agreement from which they did not opt out.

The next question is the effect of the plaintiffs' *subsequent* opt-outs on these pre-existing agreements to arbitrate. This issue is not presented to the Court on a clean slate. In 2023, Zurek filed a suit in the Circuit Court of Cook County seeking a temporary restraining order and injunction against Uber after it terminated his access to the Uber driver app due to the results of a criminal background check. *See Zurek v. Uber Techs., Inc.*, No. 2023 CH 02073 (Cir. Ct. of Cook Cnty. May 25, 2023). Uber moved to dismiss the case or, in the alternative to compel arbitration, arguing that Zurek entered into a PAA in 2020 with a binding arbitration provision. Zurek argued, as he does in the present case, that he was not obligated to arbitrate because he signed a

subsequent PAA in 2022 and opted out of the arbitration provision in that contract.  Uber responded, as it does in this case, that the opt-out clause of the 2022 PAA stated that it did not affect any other preexisting arbitration agreement between the parties.  The Circuit Court denied Uber's motion.  It reasoned that Uber's interpretation of the contracts would "nullify Plaintiff's unambiguous right to opt out of the arbitration provision of the 2022 PAA and render the opt out provision of the 2022 PAA meaningless."  *Id.* at 4.  The court therefore held that Zurek was not bound by the arbitration provision "for any dispute arising during the effective period of the 2022 PAA."  *Id.*

The plaintiffs argue that the *Zurek* court's decision is issue preclusive regarding the effect of the opt-out clause of the 2022 PAA with respect to Zurek.[4]  Illinois law governs the preclusive effect of an Illinois state court judgment.  *See Creation Supply, Inc. v. Selective Ins. Co. of Se.*, 51 F.4th 759, 763 (7th Cir. 2022).  "Issue preclusion prevents a party from relitigating an issue that it has previously litigated and lost."  *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002).  "Under Illinois's issue preclusion law, an issue litigated in a prior proceeding may not be relitigated if (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the

---

[4] The plaintiffs state that the decision is issue preclusive "certainly at least with respect to Plaintiff Zurek, if not with respect to all the named plaintiffs."  Pls.' Resp. to Mot. to Compel Arb. at 14.  But it is the "heavy burden" of the party asserting issue preclusion to establish that the doctrine should be applied.  *Los Amigos Supermarket, Inc. v. Metro. Bank & Tr. Co.*, 306 Ill. App. 3d 115, 125, 713 N.E.2d 686, 694 (1999).  The plaintiffs' equivocal suggestion that the decision may or may not be preclusive with respect to the named plaintiffs other than Zurek is not sufficient to carry this burden.

prior adjudication." *Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010) (quoting *Dunlap v. Nestle USA, Inc.*, 431 F.3d 1015, 1018 (7th Cir. 2005)).

The Court concludes that these three requirements are met. First, the issue before the *Zurek* court was whether Zurek could be compelled to arbitrate a claim that arose after he opted out of Uber's binding arbitration provision in 2022 because he had entered into an earlier agreement to arbitrate in 2020. That is identical to the question presented to this Court. Second, there was a final judgment on the merits of the issue because the *Zurek* court denied Uber's motion to dismiss for lack of subject matter jurisdiction. Third, there is no dispute that Uber was a party to both cases.

Uber advances four arguments for why *Zurek* should not be considered preclusive. First, Uber appears to suggest that the court's decision was wrong on the merits. But "the correctness of the earlier decision is not a factor in determining whether collateral estoppel applies." *In re Sharif*, 628 F. Supp. 3d 780, 788 (N.D. Ill. 2022).

Second, Uber argues that "the court decided the enforceability of Zurek's arbitration provision issue under state law, not under the FAA" and thus "[t]he issues before the Court here are therefore different." Def.'s Reply to Mot. to Compel Arb. at 15. The question the *Zurek* court addressed, however, was whether there was a binding agreement to arbitrate in the first place given that Zurek opted out of the 2022 PAA's arbitration provision. That is a question of state law irrespective of whether the FAA applies. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) ("Even [under the FAA], courts cannot require a party to submit a dispute to arbitration unless he has agreed to do so. . . . We apply state-law principles of contract formation to answer these questions."). Moreover, the fact that Uber perhaps could

have but apparently chose not to raise federal-law *arguments* in support of its motion before the *Zurek* court does not mean that *issue* decided by that court is meaningfully different from the issue presented to this Court. A litigant cannot avoid the preclusive effect of a court's decision simply by identifying a new reason why it may have been incorrect.

Third, Uber argues that *Zurek* is not preclusive with respect to its motion to compel based on the 2020 PAA because the court in that case "specifically did not address the enforceability of the 2020 PAA." Def.'s Reply to Mot. to Compel Arb. at 15. It is true that the court reasoned that it was "not necessary to address whether [Zurek] actually received and agreed to the 2020 PAA." *Zurek*, No. 2023 CH 02073, at 4. But that was because the court expressly stated that "the only reasonable interpretation of [the opt-out clause] is that [Zurek] would still be bound by the arbitration provision of the 2020 PAA for any dispute arising during the effective period of the 2020 PAA, *but not for any dispute arising during the effective period of the 2022 PAA*." *Id.* (emphasis added). In short, the *Zurek* court directly addressed the effect of the 2022 opt-out on the 2020 PAA, which is the precise issue before this Court.

Finally, Uber states in a footnote that the Cook County court's decision "never became final" because "Uber appealed to court's order and then the case settled and was dismissed." Def.'s Reply to Mot. to Compel Arb. at 15 n. 12. But the Court does not see, and Uber does not explain, how Uber's decision to dismiss its appeal and settle the case in any way affects the finality of the lower court's decision for purposes of issue preclusion. Uber has not argued, for example, that the parties' settlement agreement stipulated that Zurek would not rely on that decision for preclusion purposes or that the

dismissal after the parties' settlement somehow vacated the court's decision. To the contrary, the Illinois Supreme Court has explained that "[c]ollateral estoppel may apply to determinations made prior to the entry of a settlement agreement disposing of the underlying litigation." *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 195 Ill. 2d 71, 86, 744 N.E.2d 845, 853 (2001). In sum, the Court concludes that the Circuit Court of Cook County's determination that Zurek is not bound to arbitrate claims arising after he entered into the 2022 PAA is preclusive in this case. The Court therefore denies Uber's motion to compel Zurek to arbitrate claims arising after he entered into the 2022 PAA.

With respect to the three remaining plaintiffs, the Court respectfully disagrees with the court in *Zurek* and concludes that the plaintiffs' later opt-outs do not supersede or invalidate their earlier agreements to arbitrate. Under Illinois law, "[i]f the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) (quoting *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 160, 821 N.E.2d 206, 213 (2004)). The opt-out clause upon which the plaintiffs rely clearly states: "If you opt out of this Arbitration Provision and at the time of your receipt of this Agreement you were bound by an existing agreement to arbitrate disputes arising out of or related to your use of our Platform and Driver App, that existing arbitration agreement will remain in full force and effect." Def.'s Mot. to Compel, Ex. 3 § 13.8(c). The plain language of the contract therefore unambiguously addresses the exact issue before the Court in this case. The plaintiffs' assertion that their decision to opt out of *subsequent* PAAs overrules their earlier acceptance of an obligation to

arbitrate is contrary to the express language of the opt-out clause. Furthermore, the Court disagrees that this interpretation necessarily leads to an "absurd result." *Zurek*, No. 2023 CH 02073, at 4. The opt-out clause as written remains effective for new Uber drivers signing their first PAA. The Court therefore joins several other courts in concluding that the plaintiffs' subsequent opt-outs cannot undo their previous acceptance of an obligation to arbitrate if the express terms of the opt-out clause provide otherwise. *See, e.g.*, *Nicholas v. Uber Techs., Inc.*, No. 19 C 8228, 2020 WL 4039382, at *6 (N.D. Cal. July 17, 2020); *Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919, 928 (N.D. Cal. 2020); *Wickberg v. Lyft, Inc.*, 356 F. Supp. 3d 179, 185 (D. Mass. 2018).

**B.     Enforceability of the arbitration agreement**

At this point, the plaintiffs' only remaining argument against Uber's motion to compel arbitration is that, even if they agreed to the arbitration provision, it is not legally binding because it contains a class action waiver that is unconscionable and thus unenforceable under Illinois law. Although the arbitration provision contains a delegation clause stating that issues of enforceability are for the arbitrator to decide, the parties do not dispute that there is an express carve-out for the enforceability of the class action waiver. *See* Def.'s Mot. to Compel Arb. at 8 ("The Arbitration Provisions contain a broad delegation clause, requiring the arbitrator to resolve disputes [of] . . . enforceability . . . except for disputes regarding the Class Action Waiver and Representative Action Waiver, which are reserved for a court." (internal quotations omitted)); *id.*, Ex. C § 13.3(j) ("[O]nly a court of competent jurisdiction, and not an arbitrator, shall have exclusive authority to resolve any and all disputes arising out of or

relating to the Class Action Waiver . . . including, but not limited to, any claim that all or part of the Class Action Waiver . . . is unenforceable, unconscionable, illegal, void, or voidable . . . .").  The Court therefore must decide whether the arbitration provision's class action waiver is unconscionable.

If the FAA applies, then Supreme Court precedent precludes the plaintiffs' argument.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (holding that the FAA preempts state law "conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures"); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018) (applying the logic of *Concepcion* to a FLSA collective action).  Under the FAA, Uber can compel arbitration on an individual basis regardless of whether the class action waiver is considered unconscionable under Illinois law.  *See Lamps Plus, Inc.*, 587 U.S. at 187 (reiterating that "courts may not rely on state contract principles to 'reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent'" (quoting *Epic Sys. Corp.*, 584 U.S. at 509)).  If the FAA does not apply, however, then the question turns on Illinois law.

The parties vigorously debate whether the plaintiffs belong to a class of "workers engaged in the movement of goods in interstate commerce." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020).  If they do, then section one of the FAA exempts the plaintiffs from its coverage.  *Id.*  The Seventh Circuit has not squarely addressed whether Uber drivers or similar "rideshare" providers qualify for the exemption on the basis that they sometimes transport passengers across state lines.

The Court need not reach this question because, for the reasons explained below, it concludes that the plaintiffs have not shown that the class action waiver is

unconscionable under Illinois law.  Thus, even if the Court were to agree with the plaintiffs in favor of applying the section one exemption to the FAA, the parties would still be required to arbitrate under Illinois law.  The result is therefore the same regardless of whether the FAA applies:  plaintiffs must arbitrate their claims on an individual basis pursuant to the terms of the arbitration provisions that they entered into, including the class action waiver.  *See, e.g.*, *Nelson v. Gobrands, Inc.*, No. 20 C 5424, 2021 WL 4262325, at *5 (E.D. Pa. Sept. 20, 2021) ("Notwithstanding the Transportation Worker Exemption [of section one of the FAA], when state law grounds exist that would permit the enforcement of an arbitration provision then an analysis under the FAA is unnecessary.").

The Illinois Uniform Arbitration Act (IUAA) "embodies a policy that favors arbitration as a cost-effective method of dispute resolution."  *Guarantee Tr. Life Ins. Co. v. Platinum Supplemental Ins., Inc.*, 2016 IL App (1st) 161612, ¶ 26, 68 N.E.3d 481, 488.  Under the IUAA, "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract."  710 ILCS 5/1.

The plaintiffs cite to the Illinois Supreme Court's decision in *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 857 N.E.2d 250 (2006), to argue that the class action waiver in Uber's arbitration provision is unconscionable and therefore unenforceable.  In *Kinkel*, the Illinois Supreme Court held that a class action waiver in an arbitration clause of a consumer cell service contract was substantively unconscionable.  The court expressly stated, however, that class action waivers are not *per se* unconscionable under Illinois

law. *Id.* at 48, 857 N.E.2d at 278. Rather, "[t]he unconscionability of class action waivers must be determined on a case-by-case basis, considering the totality of the circumstances." *Id.* Although the court held that the class action waiver in the Cingular Wireless contract was not procedurally unconscionable, it was nevertheless unenforceable because it was substantively unconscionable. *Id.* at 42, 857 N.E.2d at 274–75. "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Id.* at 28, 857 N.E.2d at 267 (quoting *Maxwell v. Fidelity Fin. Servs., Inc.*, 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995)). "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.*

Analyzing Cingular's class action waiver under this standard, the Illinois Supreme Court identified several reasons why it was substantively unconscionable under the totality of the circumstances. One central reason for the court's decision was that the plaintiff's claim was for only $150, yet the contract required her to pay for certain arbitration costs that would exceed any recovery. Thus, the court explained, the provisions of the contract "operat[ed] together to create a situation where the cost of vindicating the claim [was] so high that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy [was] as either the representative or a member of a class." *Id.* at 42, 857 N.E.2d at 274–75. The class action waiver, however, closed the door on the only path to relief. The court also emphasized that "several other provisions of the arbitration clause also burden[ed] an individual customer's ability to vindicate this claim," including (1) a "strict confidentiality clause" that would prevent

claimants from sharing information with other potential claimants, (2) the fact that consumers did not have the ability to reject or bargain over the class action waiver, and (3) the fact that the contract did not reveal the cost of arbitration. *Id.* at 27, 29–30, 42, 857 N.E.2d at 266, 268, 274–75.

The plaintiffs in this case cite to only two concrete reasons why the class action waiver is unconscionable. First, they argue that the "costs of arbitrating a claim like the one Plaintiffs bring here to a final decision typically run tens of thousands of dollars," and thus it is "likely that the costs of arbitration could exceed the value of Plaintiffs' claims." Pl.'s Resp. to Mot. to Compel Arb. at 12. Second, they argue that "drivers may not be aware that they are owed wages or expense reimbursement in the first instance, and they will require an attorney's advocacy to even know about the claim, much less pursue it." *Id.* at 13. Uber responds that the plaintiffs have not shown that their claims would be cost-prohibitive on an individual basis; it does not dispute the plaintiffs' second point.

The plaintiffs cite to two post-*Kinkel* cases in which an Illinois court has held that a class action waiver is unconscionable. Both cases, however, involved low-dollar-value consumer claims similar to the claim in *Kinkel*. *See Wigginton v. Dell, Inc.*, 382 Ill. App. 3d 1189, 1197, 890 N.E.2d 541, 549 (2008) (stating that the putative lead plaintiff's claim was for $500 and the average class member's claim was $250); *Keefe v. Allied Home Mortg. Corp.*, 393 Ill. App. 3d 226, 235, 912 N.E.2d 310, 319 (2009) (stating that the putative lead plaintiff's claim was for $46). "Where a party seeks to invalidate an arbitration provision on the ground that the arbitration would be prohibitively expensive, that party has the burden to show the likelihood of incurring those costs*." Bess v.*

*DirecTV, Inc.*, 381 Ill. App. 3d 229, 240–41, 885 N.E.2d 488, 498 (2008); *Williams v. Jo-Carroll Energy, Inc.*, 382 Ill. App. 3d 781, 788, 890 N.E.2d 566, 572 (2008). "In order to meet [this] burden, the party must provide some individualized evidence to show that she is likely to face prohibitive costs in the arbitration and that she is financially incapable of meeting those costs." *Bess*, 381 Ill. App. 3d at 241, 885 N.E.2d at 498.

The Court concludes that the plaintiffs have not carried this burden here. The plaintiffs seek to recover damages associated with three years of driving over 40 hours per week for Uber. There is therefore reason to at least question whether the same kind of cost-recovery disparity that was central to the Illinois Supreme Court's decision in *Kinkel* exists in this case. But the plaintiffs have not even hinted at the estimated value of their individual wage claims, which are likely in a different ballpark from the $46–500 at issue in *Kinkel*, *Wigginton*, and *Keefe*. In short, the plaintiffs have not shown that this is a situation like *Kinkel* where "[t]he combined effect of the arbitration provision and the class-action waiver [is] to insulate the defendant from an entire class of claims." *Williams*, 382 Ill. App. 3d at 788, 890 N.E.2d at 572. The Court therefore concludes that the plaintiffs have not carried their burden to show that the class action waiver is unconscionable under Illinois law.

To summarize, the Court concludes that issue preclusion requires it to find that Zurek is not bound to arbitrate any claim arising after the effective period of the 2022 PAA based on the Circuit Court of Cook County's holding in *Zurek v. Uber Technologies, Inc.* The Court therefore denies Uber's motion to compel arbitration with respect to those claims. The Court concludes that Agha, Crissman, and Loftus entered into arbitration agreements with Uber that were not invalidated by their subsequent opt-out

requests. Although the parties dispute whether the FAA applies, the Court need not resolve the dispute because Uber seeks in the alternative to enforce the agreement under the IUAA, and the Court disagrees with plaintiffs' only argument for why the arbitration agreement is unenforceable under Illinois law. The Court therefore grants Uber's motion to compel arbitration with respect to Agha, Crissman and Loftus.

## C.    FLSA collective action certification

Because the Court has denied Uber's motion to compel with respect to Zurek's claims arising after he opted out of the 2022 PAA's arbitration provision, the Court next determines whether to conditionally certify an FLSA collective action for the class that Zurek seeks to represent:  "all drivers who have worked for Uber in Illinois during the last three years." Pls.' Mot. for Conditional Cert. at 1.

"The Fair Labor Standards Act gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (quoting 29 U.S.C. § 216(b)). "A district court has wide discretion to manage collective actions." *Id.* at 449. District courts in the Seventh Circuit typically use a "two-step" approach to FLSA collective actions. *See Iannotti v. Wood Grp. Mustang*, 603 F. Supp. 3d 649, 653 (S.D. Ill. 2022). First, a court decides whether to grant "conditional certification." *Id.* "The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). At this stage, the central question is "whether the plaintiff and members of the proposed class are similarly

situated enough to allow notice to be sent to prospective plaintiffs." *Iannotti*, 603 F. Supp. 3d at 653. This step requires only that plaintiffs make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15 C 10447, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016). "The Court does not, however, 'make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.'" *Iannotti*, 603 F. Supp. 3d at 653 (quoting *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016)). "In the second stage, after the completion of discovery and the opt-in process, the court reexamines the conditional certification to determine whether the trial as a collective action is proper." *Pieksma*, 2016 WL 7409909, at *1 (quoting *Boltinghouse v. Abbott Labs., Inc.*, No. 15 C 6223, 2016 WL 3940096, at *4 (N.D. Ill. July 20, 2016)).

The Court concludes that Zurek has made a sufficient showing that conditional certification is appropriate. The crux of Zurek's FLSA claim is that "Uber drivers are uniformly subjected to a similar policy of being classified as independent contractors for their transportation duties, not getting paid time-and-a-half for the hours they work beyond forty each week, and not receiving minimum wage for all hours worked." Pls.' Mot. for Conditional Cert. at 5–6. Zurek's claims are based on alleged company-wide policies that apply uniformly to all Uber drivers. He contends that all Uber drivers have the same job responsibilities, are subject to the same rules regarding the drivers' work performance and are subject to the same compensation and classification structure.

In response, Uber does not dispute that the various policies that Zurek points to

apply uniformly to all Illinois Uber drivers.  Rather, Uber argues that Zurek has not shown that its uniform policies were "unlawful."  *See* Def.'s Resp. to Mot. for Conditional Cert. at 7.  But, as discussed, courts generally do not make "merits determinations" at the conditional certification stage.  *Iannotti*, 603 F. Supp. 3d at 653.  "Courts in this district and others routinely refrain from entertaining at this juncture whether as a matter of law Plaintiffs have demonstrated they were misclassified."  *Williams v. TopHat Logistical Sols., LLC*, No. 23 C 1573, 2023 WL 8190366, at *7 (N.D. Ill. Nov. 27, 2023).

Of course, the Court agrees with Uber's general proposition that a court need not certify and issue notice of a collective action any time the plaintiff has made a bare allegation that the defendant has misclassified all of its employees.  But that is not the case here.  To the contrary, the amended complaint discusses several aspects of drivers' relationship with Uber that the plaintiffs argue support the fact that they have been misclassified.  *See, e.g.*, Am. Compl. ¶ 20 ("Uber requires its drivers to abide by a litany of policies and rules designed to control the drivers' work performance" and "may terminate a driver if the driver behaves in a way that Uber believes is inappropriate . . . ."); *id.* ¶ 21 ("Customers cannot request specific Uber drivers; instead, Uber assigns rides to drivers."); *id.* ¶ 23 ("Drivers' tenure with Uber is for an indefinite amount of time."); *id.* ¶ 30 ("Uber will force drivers who decline three consecutive trips to log out of the Uber application.").  In addition, Zurek has submitted an affidavit stating that he drives between 20 and 50 hours per week; he receives his pay directly from Uber rather than from passengers; he is not able to negotiate his rates with passengers; Uber sets rates and calculates how much he is paid; he is responsible for "all driving related expenses"; and "there are some hours during which [he] ha[s] been logged on to the

Uber app, ready and able to drive passengers, but ha[s] not received any ride requests and so ha[s] not received any pay for these hours."  Pls.' Mot. for Conditional Cert., Ex. D at 2.

In sum, Zurek's allegations and testimony center on policies that apply uniformly across all drivers.  Moreover, Uber has not indicated any disagreement with Zurek's contention that Uber has uniform policies for all of its Illinois drivers, nor has it asserted that there is anything unique about Zurek's experience that might mean he is not similarly situated to other Illinois drivers for purposes of his FLSA claims.  The Court concludes that Zurek has demonstrated "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation." *Williams*, 2023 WL 8190366, at *6.  Conditional certification is appropriate.

**D.      FLSA class notice**

The parties dispute who should receive notice of the right to opt-in to the FLSA collective action under section 216(b).  The plaintiffs assert that notice should be sent to "all drivers who have worked for Uber in Illinois during the last three years."  Pls.' Mot. for Conditional Cert. at 1.  Uber responds that the vast majority of Illinois drivers have not opted out of the arbitration clause of the PAA and therefore are ineligible to join the class.  *See* Def.'s Resp. to Mot. for Conditional Cert., Ex. 1 ¶ 13 ("In Illinois, only approximately 500 out of approximately 125,000 drivers (or approximately 0.4%) have submitted correspondence attempting to opt out of arbitration in the three years preceding the filing of the Complaint in this matter.").  Uber argues that notice should be sent only to the small number of Illinois drivers who have opted out of arbitration.

The Seventh Circuit has held that "a court may not authorize notice to individuals

22

whom the court has been shown entered mutual arbitration agreements waiving their right to join the action" and that "the court must give the defendant an opportunity to make that showing." *Bigger v. Facebook*, *Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020). The Seventh Circuit provided "specific steps" that a district court must follow. *Id.* "First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients." *Id.* "[I]f a plaintiff contests the defendant's assertions, then—before authorizing notice to the alleged 'arbitration employees'—the court must permit the parties to submit additional evidence on the agreements' existence and validity." *Id.* The defendant must "establish[ ] by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Id.* at 1047.

The plaintiffs argue that Uber should have provided, in its response to the motion for FLSA certification, all of its evidence regarding the specific employees who have entered into valid arbitration agreements. By failing to do so, the plaintiffs argue, Uber has failed "to meet its burden showing that each of the drivers that it seeks to exclude from the opt-in collective executed a valid and enforceable arbitration agreement." Pls.' Reply to Mot. for Conditional Cert. at 4.

The Court acknowledges the time-sensitive nature of notice to potential opt-in plaintiffs and agrees that Uber's response lacked specificity regarding the individual drivers they allege are or are not bound by arbitration agreements. But Uber represents to the Court in its brief that it "does not oppose tolling the statute of limitations" for sixty days if the Court grants it additional time to carry its burden under *Bigger*. *See* Def.'s Resp. to Mot. for Conditional Cert. at 14 n. 10. In light of this agreement, the Court

gives Uber fourteen days, to May 6, 2024, to file a submission that "establishes by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Id.* The plaintiffs have fourteen days thereafter, to May 20, 2024. The Court will make a ruling by no later than May 28, 2024 and will direct the prompt sending of notice thereafter.[5] The FLSA statute of limitations is tolled through June 21, 2024 for all such persons.

Finally, the parties disagree regarding certain aspects of the plaintiffs' proposed notice plan. Uber asks the Court to order the parties to confer regarding: (1) the plaintiffs' desire to issue "notice by text message" in addition to postal mail and e-mail and to issue a "reminder notice"; (2) the proposed 90-day opt-in period, which Uber asserts is "unnecessary" and "excessive"; (3) the production of a collective list to plaintiffs' counsel rather than to a third-party administrator, for which Uber agrees to pay associated costs; (4) "certain proposed Notice language"; and (5) "sending notice for a three-year period that begins any earlier than three years back from the date, if any, that the Court grants conditional certification." Def.'s Resp. to Mot. for Conditional Cert. at 15.

It appears from the parties' submissions that they have not yet made a good-faith effort to confer on these issues but that they may be able to reach an agreement on some, if not all, of these disputes. For example, the plaintiffs indicate that they "do not generally disagree" with Uber that the three-year notice period should run from the date

---

[5] In preparation for this, Uber is directed to promptly compile the contact information for all persons potentially within the collective group, and the parties are directed to promptly confer regarding the terms of a proposed notice, so that matters are ready to go if and when the Court makes a ruling authorizing the sending of notice.

of conditional certification.  Pls.' Reply to Mot. for Conditional Cert. at 12.  In addition, the plaintiffs have not responded to Uber's proposal of using, at its expense, a third party administrator to send notice.  Because notice cannot be sent until the Court receives the parties' submissions and rules on the outstanding *Bigger* issue, the Court declines to decide these notice-related issues before the parties have attempted to resolve their disputes. The Court orders the parties to meet and confer to attempt to agree upon a proposed notice and notice plan within twenty-one days, in other words, by May 13, 2024.  If the parties cannot agree, each should submit its proposed notice plan, and the Court will approve a final version.

### Conclusion

For the reasons stated above, the Court grants Uber's motion to compel arbitration [dkt. no. 19] with respect to Agha, Crissman, and Loftus, but denies the motion with respect to Zurek for claims arising after his opt-out of the arbitration provision of the 2022 PAA.  The Court provisionally grants the motion for conditional certification of a FLSA collective action [dkt. no. 12] of "all drivers who have worked for Uber in Illinois during the last three years."  Pls.' Mot. for Conditional Cert. at 1.  The parties are directed to submit additional briefing as detailed in this order.  The case is set for a telephonic status hearing on May 23, 2024 at 9:10 a.m., using call-in number 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  April 22, 2024